TEAMSTERS LOCAL UNION #11 AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AN UNINCORPORATED ASSOCIATION, AND FRANK DODGE, JR., PLAINTIFFS, v. GEORGE ABAD AND ABCD TRUST, PARTNERS T/A GENERAL GROCERY WAREHOUSE CO., AND GENERAL GROCERY WAREHOUSE CO., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided July 22, 1975.

*Mr. Scott E. Tanne* for plaintiffs (*Messrs. Schneider, Solomon & Aronson,* attorneys).

*Mr. Edward J. Gilhooly* for defendant (*Messrs. Yauch, Peterpaul & Clark,* attorneys).

KENTZ, J. S. C. Plaintiffs Teamsters Local Union No. 11 (Union) and Frank Dodge, Jr. (Dodge) have filed a complaint and an order to show cause seeking the vacation of

an arbitration award pursuant to *N. J. S. A.* 2A:24–8. Defendant George Abad, t/a General Grocery Warehouse Co. (Abad), has filed a motion seeking dismissal of the complaint and a counterclaim seeking confirmation of the award.

The significant facts are not disputed. An arbitration award dated January 8, 1975 sustained the discharge of Dodge by his employer Abad. Admittedly, there was compliance by the parties to the existing collective bargaining agreement requirements. On September 24, 1974 Dodge was discharged on the grounds of a poor productivity record. John Wade and Salvatore Trimboli (Trimboli) testified on behalf of Abad at the arbitration hearing on December 11, 1974. The arbitrator issued his opinion on January 8, 1975, stating that "it was the clear thrust of the credible testimony that the grievant was not pulling his weight and that his work productivity was unsatisfactory."

On January 24, 1975 Trimboli was discharged by Abad. In an affidavit signed on April 2, 1975 Trimboli states that as warehouse manager for Abad he was told in August 1974 by Abad that "We have to start building a case against Frank Dodge. He is making too many waves for the company and nothing more than a troublemaker. We have to find reasons to fire him." Trimboli went on to state that he started to gather data from the production record of Dodge but found that about half of the daily production sheets were missing. Trimboli stated that he testified at the arbitration hearing knowing these records were missing. Trimboli produced a chart which indicated the production records of several employees, including Dodge, for a period of several months. This chart was introduced and represented to be a continuing record when, in fact, a number of the records were missing which was not so indicated on the chart.

Abad by affidavit denies he told Trimboli to "build a case against Frank Dodge." It should be noted that Abad does not deny the fact that certain production records were not produced nor is there a denial that the chart omitted to note the fact that there were missing records.

*N. J. S. A.* 2A:24–8 sets forth the circumstances under which an award may be vacated and in pertinent part reads:

> The court shall vacate the award in any of the following cases:
> a. Where the award was procured by corruption, fraud or undue means;
> b. Where there was either evidence partiality or corruption in the arbitrators, or any thereof;
> . . . . . . . . . . . . . . . . . . . .
> When an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

Plaintiffs contend that although subsection (b) of *N. J. S. A.* 2A:24–8 is not applicable herein, it must be read in conjunction with subsection (a) thereof. Plaintiffs assert that subsection (b) provides for vacation of an award in the event of corruption on the part of the arbitrator. Subsection (a) also speaks in terms of corruption and plaintiffs contend that this should be interpreted to mean corruption on the part of the parties to the arbitration. Plaintiffs therefore allege that corruption and fraud on behalf of Abad in knowingly submitting incomplete production records warrants a vacation of the award pursuant to subsection (a) of *N. J. S. A.* 2A:24–8.

Abad also contends that subsection (a) is the only applicable provision. Abad alleges that "undue means" is inapplicable for the reason that no mistake in the application of a legal rule or mistaken fact is apparent. See *Anco Products Corp. v. T. V. Products Corp.,* 23 *N. J. Super.* 116, 125 (App. Div. 1952) ; *Held v. Comfort Bus Line, Inc.,* 136 *N. J. L.* 640, 641 (Sup. Ct. 1948). This court agrees. The award does not on its face mistakenly apply either a legal rule or any of the facts presented. The award will not be vacated upon the ground that it was procured by "undue means."

There remain for consideration the categories of "corruption" or "fraud" under *N. J. S. A.* 2A:24–8(a).

Abad, in alleging that no fraud was present, addresses the issue in terms of purported perjury on the part of Trimboli and urges this court to apply a stricter standard than that applied in the granting of a new trial after a verdict. See *Stoll's Adm'r v. Price,* 21 *N. J. L.* 32 (Sup. Ct. 1847), aff'd 22 *N. J. L.* 578 (E. & A. 1849).

The standard applied where there is an allegation of perjury or fraud upon the court is stated as:

Clear, convincing and satisfactory evidence to have been, not false merely, but to have been wilfully and purposely falsely given, and to have been material to the issue tried and not merely cumulative but probably to have controlled the result. [*Shammas v. Shammas,* 9 *N. J.* 321, 330 (1952)]

Two cases cited by Abad as supporting this strict standard, *Newark Stereotypers Union No.* 18 *v. Newark Morning Ledger Co.,* 397 *F.* 2d 594 (3 Cir. 1968), *cert.* den. 393 *U. S.* 954, 89 S. Ct. 378, 21 L. Ed. 2d 365 (1968); and *Karppinen v. Karl Kiefer Machine Co.,* 187 *F.* 2d 32 (2 Cir. 1951), both proceed into an inquiry of the facts and merits of the case in concluding that the evidence as a whole supported the arbitration award. Such inquiries into the facts and merits appear to be in contradiction of the general rule that a court should not examine the merits of the facts presented to the arbitrator. See *Stoll's Adm'r, supra.*

A dilemma thus faces this court in that the court is satisfied that production records were indeed withheld. The above-quoted language of *Shammas* would seem to require this court to view the omitted production records and decide whether these were material to the issue and having a controlling effect on the result. However, the rule set forth in *Stoll's Adm'r* constrains this court in its inquiry into the facts and merits of the case.

The solution to this dilemma is to view the remaining category under *N. J. S. A.* 2A:24–8(a), namely, "corruption." Plaintiffs initially contend that this term refers

to corruption on the part of one of the parties in view of the language in subsection (b) referring to corruption on the part of the arbitrator. A reading of the two subsections does lead to a conclusion that subsection (a) refers to corruption on the part of one of the parties to the arbitration procedure.

Plaintiffs further argue that the intentional withholding of certain production records constitutes corruption as set forth in subsection (a), thus warranting the vacation of the award. Unfortunately, the case law of New Jersey fails to provide guidelines on what constitutes corruption. The cases often talk of fraud and corruption concurrently but fail to define or provide guidelines for corruption. See *Held, supra; Bell v. Price,* 21 *N. J. L.* 32 (Sup. Ct. 1847); *Atkinson v. Townley,* 1 *N. J. L.* 388 (Sup. Ct. 1795).

*Black's Law Dictionary* (4 ed. 1968) defines corruption as:

Illegality; a vicious and fraudulent intention to evade the prohibitions of the law; something against or forbidden by law; moral turpitude or exactly opposite of honesty involving intentional disregard of law from improper motives.

An act done with an intent to give some advantage inconsistent with official duty and the rights of others.

This court is satisfied that there was an apparent conscious withholding of a portion of the employee's production records. The affidavit by Abad does not deny such a fact. These records were clearly pertinent to the material issues of the case. Willful concealment of relevant records by a party to arbitration serves only to tear away at the very arbitration process which the defendant herein contends should be favored and followed by this court. In my view such action clearly falls within the definition of corruption as the term is used in *N. J. S. A.* 2A:24–8(a).

Undoubtedly, arbitration is encouraged by the courts. *Anco* and *Held, supra.* However, this conduct constitutes corruption *per se* and should not be condoned. To allow

a party to misrepresent a production chart as being complete when in fact certain records were withheld would be approving corruption as a part of the arbitration process. Therefore, this award is vacated.

*N. J. S. A.* 2A:24–8 makes provision for a rehearing by an arbitrator within the discretion of the court when an award has been vacated, provided that the time for the making of the award has not expired under the terms of the collective bargaining agreement. Although it appears that the collective bargaining agreement here is silent with respect to the time within which it is required that an award be made, nevertheless it is my view under the circumstances of this case that the sound exercise of discretion requires that Dodge be reinstated to his employment. See *LaStella v. Garcia,* 128 *N. J. Super.* 173 (App. Div. 1974); *Held, supra.*

In view of this holding that the award was procured by corruption it is unnecessary for this court to decide the fraud issue.